LYDIA B. ATWOOD and another *vs.* MICHAEL C. O'BRIEN.

Penobscot.    Opinion June 20, 1888.

*Deed.    Boundary.    Way.*

When the premises conveyed by a deed are described as bounded upon one side by the continuation of a side line of a street, that does not constitute a dedication of the land for a street up to and past the premises conveyed, though the continuation of the street was contemplated.

If the grantor by a second deed convey to the same grantee the fee to the center line of the contemplated street, the acceptance of that deed would constitute a waiver of all rights, if the grantee had any, beyond the center line of the contemplated street, until it was actually established as a street.

ON report of facts agreed.

The opinion states the case and material facts.

*Charles H. Bartlett*, for plaintiff, cited : Wash. Ease. (4 ed.) 211, 269 ; *Bartlett* v. *Bangor*, 67 Maine, 460 ; *Holdane* v. *Cold Spring*, 21 N. Y. 474 ; Bigelow, Estoppel, (4 ed.) 616, 350, 445 ; *Low* v. *Tibbetts*, 72 Maine, 92 ; *Holmes* v. *Turner's Falls L. Co.* 142 Mass. 590 (3 New Eng. Rep. 177) ; *Parker* v. *Smith*, 17 Mass. 411 ; *Bullard* v. *Dyson*, 1 Taunt. 279 ; *Harding* v. *Wilson*, 2 B. & C. 96 ; *Salisbury* v. *Andrews*, 19 Pick. 250 ; *Walker* v. *Worcester*, 6 Gray, 548 ; *Plymouth* v. *Wareham*, 126 Mass. 475 ; *Crowell* v. *Beverly*, 134 Mass. 98 ; *Nobleboro* v. *Clark*, 68 Maine, 87 ; *Howe* v. *Alger*, 4 Allen, 206 ; *Wood* v. *Pennell*, 51 Maine, 52.

*P. H. Gillin*, for defendant.

We claim by the well settled law in this state and Massachusetts, a right of way in and over the "*locus in quo.*"    109

Mass. 292; 32 Maine, 80; 10 Pick. 138; 17 Mass. 413; 20 Wend. 149; 3 Kent, 433; 18 Maine, 76; 67 Maine, 460.

By a well settled principle of the law as laid down, 8 Met. 266; 11 Pick. 213; 10 Maine, 335, the plaintiffs are estopped from denying our right of way over the "*locus in quo*," viz.: When a deed refers to a plan, if the description is partly given differing from the plan, this will vary the plan accordingly.

The general and well established rule of law in this and other states, according to the opinion of the court in *White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65, is " that where the owner of land in a city lays out a street through it, and sells lots on each side of the street, the public have an easement of way, or right of passage, although it may not become a public highway in the ordinary sense of that term until the dedication is accepted and the street adopted by the corporation, and the grantees of the lots are entitled as purchasers to have the interval or space of ground left open forever as a street."

The subsequent act of the plaintiffs' deeding to Kelley to the centre of Rowe street, while it gave him what he did not before possess, a fee to part of the street, 33 Maine, 502, could not have any bearing in taking from the public and the purchasers along said street the right of way therein. Again, in the same case, 64 N. Y. 65, the learned court says, " while a mere survey of land by the owners into lots defining streets, squares, etc., will not without a sale amount to a dedication, yet a sale of lots with reference to such plat, or describing lots as bounded by streets, will amount to an immediate and irrevocable dedication of the latter, binding upon both vendor and vendee."

It is almost the universal rule from the earliest origin of conveying the fee to land by written instrument, that the terms of such written covenant shall be strictly construed against the grantor, and when there is neither mistake or fraud on the part of the grantee, oral evidence is not admissible to controvert or disprove his (the grantor's) solemn act. The grant of a principal thing carries with it all that is necessary for the beneficial enjoyment of the grant which the grantor can convey. 41 Maine, 177. If the plaintiffs did not mean to give their grantees at the

auction sale the free use of Rowe street as marked upon the auction plan, it was an easy matter to so mention in their deed to Kelley. 67 Maine, 460. Wash. Easements and Servitudes; Sec. ed. pp. 225, 226 and 227; 21 Pick. 292; 4 Gray, 537; 17 Mass. 413; 4 Allen, 206; 22 N. Y. 217; 24 Barb. 44; 6 Wheat. 307; 6 Gray, 548.

DANFORTH, J. An action of trespass upon land, which is before the court upon facts agreed. It is admitted that the fee is in the plaintiffs. The defendant admits the alleged acts of trespass, and justifies under a claim of a right of way. The validity of this claim is the only question involved. Its foundation is found in a deed of September 18, 1884, from these plaintiffs to Andrew Kelley, Jr., the defendant's grantor, by which land south of that in question is conveyed. The description in this deed is, so far as material, as follows, viz. : " Beginning at a point on the northwesterly side line of First street . . . being on the division line between lot No. 11 and land of Barker and Davis, according to Bradley's plan of the Davenport lands extended March 24, 1851, thence northwesterly on said division line and the continuation thereof two hundred and forty feet to a stone on the continuation of the southeasterly side line of Second street, thence northeasterly on said continuation of said line one hundred and sixteen feet to a point on the continuation of the southwesterly side line of ' Rowe street ' so called, thence southeasterly on said continuation line two hundred and forty feet to a point on the northwesterly side line of First street, thence southwesterly on said side line . . to the place of beginning." It is claimed that there is a grant of a right of way over what is called "Rowe street," or that the plaintiffs are estopped to deny the defendant such a right by virtue of this deed. It is undoubtedly well settled that a conveyance of a lot of land by reference to a plan upon which streets are laid down in connection with the lot conveyed, or when the land is bounded by a street, such a grant, or estoppel, will ordinarily follow.

But this conveyance lacks several of the elements necessary to bring it within that rule. The description is by fixed and definite metes and bounds, and not by a reference to any plan. The only plan referred to is that of Bradley's, and that only to fix the starting point. Upon that plan there is no location, no indication whatever of any such street or way, as is here claimed. The land is not bounded upon the street claimed. The northerly line which is alleged to be such a boundary, begins and runs upon the "continuation" of the southwesterly side line of "Rowe street," showing, as do the facts, that though Rowe street might be in existence at some other point, yet it did not at any place come in contact with, or adjoin this land. All these facts were patent and as well known, or should have been, to the grantee as to the grantors. The lot was bounded at each end by a located and traveled way. How then can it be said that here was a grant of a way when there was none in existence, no occasion for any, or an estoppel from asserting a truth equally well known to both parties and clearly recognized by the deed? Much more would the deed, with its definite description, come within the principle settled in *Warren* v. *Blake,* 54 Maine, 276, and exclude the way, even if there had been one.

But it is said that a continuation of "Rowe street" across the land in question was contemplated when the deed was given, and it is claimed that this intention was a sufficient dedication of it to enable the grantee to hold a right of way over it. In *Bartlett* v. *Bangor,* 67 Maine, 460, it was held that the location *of streets upon a plan and selling the lots* by reference to the plan, would constitute such a dedication of the way as could not be revoked by the owner. But our attention has not been called to any case, nor are we aware of any, where the mere recognition of a contemplated street as such would have that effect, especially where there was no location upon any plan. But however that might be under other circumstances, in this case it can have no such effect.

It appears from the facts in this case that "Rowe street" had been opened and traveled from Main street in the direction of this land in question, but stopping some little distance before

reaching First street, which is the easterly boundary of the land conveyed to Kelley. If continued in a straight line of the same width across First street to Second street, its southwesterly side line would be the northerly line of the lot sold Kelley, as described in the deed. In 1878, Mr. Wilson acting for the proprietors, proposed to the city of Bangor that if it would extend Rowe street, well " graded and gravelled," across this land, the city might have all the gravel contained on said street and two years to remove it. This proposition was accepted by Bangor, as appears by its records, and the gravel taken. This was the contemplated street. It was not dedicated to the public nor represented as such by any plan, or otherwise. The plan, made a part of the advertisement of the auction sale, showed it as a " proposed street," and the advertisement described the lot as lying on the " southerly side of the proposed extension of the so called Rowe street."

These facts were all open and the grantee was put on his guard by the terms of his deed, as well as in other ways. The plaintiffs had fully performed their part of the contract. It only remained for the city to perform its part. The contemplation, the contingency, was with it, and the fact that the street is not there, is not the fault of the plaintiffs, but is the fault of the city. When Kelley bought, if he relied at all upon having the street, he must have relied upon the city and not upon the plaintiffs.

But the case does not stop here. By the subsequent conduct of the parties, it is made clear that no claim was made by Kelley upon the plaintiffs, or if so, he released them from it. In June, 1885, the city having refused to make the street, paid for the gravel it had taken. In the following December, another contract was made between the plaintiffs and Kelley, by virtue of which another deed was given in which a nominal consideration is expressed. In this deed the plaintiffs release to Kelley all their interest in " the southerly half of the so called 'Rowe street' lying between the First and Second streets in Bangor, which adjoins land of said grantee." Then follow these words : " This deed is given for the purpose of settling beyond any doubt that the northerly line of said grantors' land, between said streets,

lies in the center of the so called Rowe street, and that said Kelley is the owner of the southerly half of said Rowe street, subject to whatever easement or right of way may be over the same." This deed having been accepted by Kelley, he is bound by its terms, and in it he acknowledges the title of the grantors to the northern half, the very land in question, without any reservation whatever, and for the expressed purpose of removing any doubts as to that title.

At the date of the first deed both parties had reason to expect and undoubtedly did expect that Bangor would extend and make fit for use "Rowe street." The deed was given and received with that impression, the grantee taking his chances. The expectation failed, the chance for a public street had gone, and the grantee's title extended only to the southerly line of the expected street. While fifty feet was perhaps none too wide for a public street, half that would be amply sufficient for all private purposes. Hence to quiet all claims, to remove all doubts, the latter deed was made, giving the grantee the control of the half adjoining him with the right of way over that, and the control of the other half without any right of way over that, to the grantors. Whatever may have been the effect of the former deed, the last one we think settled the whole matter, and if any right of way remained it was a private one, and over what became Kelley's own land. Of this construction certainly Kelley has no reason to complain, and the defendant can have no more rights than his grantor. As agreed, the entry must be,

*Defendant defaulted. Damages one dollar.*

PETERS, C. J., VIRGIN, LIBBEY, EMERY and FOSTER, JJ., concurred.